IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**THANG QUOC PHAM**                                                                            **PLAINTIFF**

v.                                            **CIVIL ACTION NO. 3:17-CV-00125-DPJ-FKB**

**TYSON FARMS, INC.**                                                    **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF
TYSON FARMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

**I.     INTRODUCTION**

Plaintiff Thang Quoc Pham ("Plaintiff") is suing Tyson Farms, Inc. ("Tyson") for breaching his chicken growing contract by allegedly wrongfully terminating it. The undisputed facts demonstrate, however, that Tyson complied with the express terms of the contract and never terminated it. Plaintiff's entire case focuses on a meeting in which he claims Tyson threatened that if he did not sell his farm, Tyson was going to terminate the contract. It is undisputed, however, that after this meeting and alleged threat, the parties continued to operate under the contract for nearly a year, Plaintiff continued to get paid and benefit under the contract, and then Plaintiff sold his farm for his asking price. There was no breach of contract or any other actionable wrongdoing by Tyson, and summary judgment should be granted and the case dismissed.

**II.    UNDISPUTED FACTS AND CLAIMS IN THE COMPLAINT**

The material facts for purposes of this motion are undisputed. Plaintiff served as an independent contract grower for Tyson for over ten years. *See* November 8, 2005 and November 1, 2012 Broiler Production Contracts between Plaintiff and Tyson, attached as Exhibit A to Tyson's Motion for Summary Judgment. Specifically, Plaintiff was a broiler producer, which

02870122

means he raised chickens provided to him by Tyson. *Id; see also* Complaint, attached as Exhibit B to Tyson's Motion for Summary Judgment at 3.2.

Plaintiff moved to Mississippi in 2005 and bought St. Paul Farm. *See* Excerpts from Plaintiff's Deposition Testimony, attached to Tyson's Motion for Summary Judgment as Exhibit C at 73; *see also* Exhibit B at 3.2 and 3.3. Plaintiff first entered into a seven-year term grower production contract with Tyson in November of 2005. *See* Exhibit A. The contract spelled out the terms of the relationship between Plaintiff and Tyson, including the duties owed by each. *See* Exhibit A. Specifically, the contract required Tyson to furnish the producer with: chickens, feed, medication, veterinary services, and technical advice to assist in the production of chickens. *See* Exhibit A at ¶ 2(A)-(C) and 4; *see also* Exhibit B at 3.4. Although Plaintiff is an educated man, he had no experience in the chicken growing industry. *See* Exhibit C at 52-53 and 58. During the course of this initial contract, Tyson sent multiple letters to him discussing various animal well-being problems found on his farm. *See* Animal Well-Being Letters attached as Exhibits D to Tyson's Motion for Summary Judgment. Plaintiff also had multiple issues regarding feed spills while growing birds for Tyson.[1] *See* Exhibit C at 173-174.

In November 2012, Plaintiff entered into a new seven-year production contract with Tyson (the "Contract"). *See* Exhibit A. Plaintiff also purchased a second farm, St. Michael Farm, in 2012. *See* Exhibit C at 81. Plaintiff never had a broiler production contract with Tyson to grow chickens on St. Michael Farm. His Contract was only for St. Paul Farm. *See* Exhibit C at 82. Plaintiff leased St. Michael Farm to other growers who had their own Broiler Production Contracts with Tyson. *See* Exhibit C at 83-84 and 296.

---

[1] Feed spills can lead to diseases that threaten the health and welfare of birds. With a feed spill, the feed falls into the dirt of the chicken house floor rather than a feed pan. Chickens will scratch the feed out of the dirt, which also contains bacteria and fecal matter. The digestion of this unwanted material can lead to serious animal health and welfare issues throughout a chicken house. *See* Excerpts of December 7, 2017 Deposition of Ray Ables attached as Exhibit H to Tyson's Motion for Summary Judgment at 75-76.

On July 14, 2015, Tyson representatives met with Plaintiff, and he alleges that Tyson threatened that if he did not sell St. Paul Farm, Tyson was going to terminate his Contract. *See* Exhibit B at 3.13; *see also* Exhibit C at 234-237. Despite this alleged threat, Plaintiff continued growing chickens for Tyson under the Contract for nearly another year until May of 2016. *See* Exhibit C at 284. Plaintiff did not rescind, cancel, or sue under the Contract immediately after this July 2015 meeting. *See* Exhibit C at 270-271. Tyson continued to fulfill its express duties under the Contract for this entire time period, and Tyson never terminated the Contract. *See* Exhibit C at 272-273.

On February 16, 2016, Plaintiff entered into a contract to sell St. Paul Farm--i.e., the chicken houses and the associated land and equipment. *See* Exhibit C at 268-269. Plaintiff closed on the sale of St. Paul Farm, receiving $800,000.00, in June of 2016. *See* Exhibit C at 277, 282-283. Plaintiff sold the farm for the first and only price that he ever asked. *Id.* at 278. At the time of this sale, Plaintiff had only $35,114.90 remaining on his mortgage for St. Paul Farm. *See* Plaintiff's Initial Disclosures, attached as Exhibit E to Tyson's Motion for Summary Judgment. Plaintiff alleges that after the sale of St. Paul Farm, Tyson asked the Plaintiff to sign an acknowledgement of voluntary termination of the Contract, which Plaintiff refused to sign. *See* Exhibit B at p. 9.

On February 23, 2017, Plaintiff filed suit against Tyson alleging four claims: (1) breach of contract, (2) tortious breach of contract, (3) breach of the duty of good faith and fair dealing, and (4) infliction of emotional distress. *See* Exhibit B. Plaintiff alleges that Tyson's misconduct caused lost profits from St. Paul Farm and emotional distress. *See* Exhibit B and E.

## III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Hobson v. Dolgencorp, LLC,* 142 F. Supp. 3d 487, 490 (S.D. Miss. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Catrett*, 477 U.S. at 323). The non-movant must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Catrett*, 477 U.S. at 324). "Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial." *Id.* (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002)). "Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law . . . all other contested issues of fact are rendered immaterial." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992) (citing *Catrett*, 477 U.S. at 323). Tyson respectfully submits that applying this standard to the facts of this case compels the entry of summary judgment.

## IV.   ARGUMENT

### A. Plaintiff has no valid claim for breach of contract.

Plaintiff alleges in the Complaint that Tyson breached the Contract and that the breach rose to the level of a tortious breach. *See* Exhibit B. The undisputed facts demonstrate that Tyson fully complied with the terms of the Contract, and Plaintiff's breach of contract claims therefore are without merit as a matter of law.

#### i. Plaintiff cannot establish a claim for <u>actual</u> breach of contract.

According to Plaintiff, Tyson breached the Contract by threatening at the July 14, 2015 meeting, without justification, that it was going to terminate the Contract if Plaintiff did not sell St. Paul Farm. *See* Exhibit B at 3.15; *see also* Exhibit C at 304-05. To prove a breach of contract, a plaintiff must show: (1) the existence of a valid and binding contract; and (2) that the defendant has broken, or breached it. *See, e.g., Business Communications, Inc. v. Banks,* 90 So.3d 1221, 1225 (Miss. 2012).

Plaintiff cannot establish that Tyson breached any term of the Contract. The Contract at issue in this case is the November 1, 2012 Contract. *See* Exhibit B at 3.10. Under the Contract, Tyson owed the following duties to the Plaintiff:

> 2(A): Company will furnish Producer with and will retain title and ownership to chickens, feed, and medication. Company will determine the amount, type, frequency, and time of delivery and pick up from Producer of chickens, feed, and medication.
> (B) Company will provide veterinary services and technical advice to assist Producer's production of Broilers.
> (C) Company will comply with all applicable federal, state, and local statutes, rules, regulations, and ordinances in performance of this Contract.

*See* Exhibit A at ¶¶ 2(A)-(C); Exhibit B at 3.4. Plaintiff understood the terms of the Contract as it was admittedly unambiguous. *See* Exhibit C at 305.

Plaintiff confirmed the nature of his breach of contract claims against Tyson in his deposition as follows:

> Q. All right. So you're claiming that Tyson breached your 2012 Broiler Production Contract by threatening, like you've told us before, without any justification, threatening to terminate your contract if you didn't sell the farm. That's what you're claiming?
> A. Yes.
> Q. And you say that that is a tortious breach because you say it was intentional and willful. Is that what you believe?
> A. Intentionally.
> Q. Yes?
> A. Yes.
> Q. All right. You're not claiming any other kind of breach of contract. That's the breach of contract you're claiming. Correct?
> A. Yes, they forced me to sell my farm.

See Exhibit C at 304-305.

Plaintiff's deposition testimony shows that Tyson in fact complied with all of the expressed duties that it owed to the Plaintiff under the Contract and did not terminate the Contract---not after the July 2015 meeting or otherwise.

> Q. I understand. After the July 2015 meeting. Okay? Tyson did continue for a period of time after that to supply you with birds to grow. Right?
> A. Yes, until I sold my farm, yes.
> Q. Okay. You continued to grow birds for Tyson. Right?
> A. Yes.
> Q. And Tyson continued to pay you.
> A. Yes.
> Q. And they did not terminate the contract. Right?
> A. They did not.
> Q. Okay. They never came in and took possession of your chickens and feed or anything like that, did they?
> A. No, they did not.
> Q. Okay. They never took control over your chicken houses, did they?
> A. No, they did not.

See Exhibit C at 272-274.

> Q. You're not saying that Tyson failed to provide you with any feed or medication or chickens or anything like that?
> A. No, they provide feed.
> Q. Okay. They never failed to pay you for any birds that you grew, did they?
> A. They paid me after I catch the chicken to the slaughter.
> Q. And they always provided you with the chickens that they were supposed to provide you with under the contract, right?
> A. Yes.

*See Id.* at 305-06. As Plaintiff cannot point to any provision of the Contract that Tyson breached, Plaintiff's claim of an actual breach of contract is without merit as a matter of law.

Plaintiff's claim of tortious breach of contract also is without merit. Under Mississippi law, "tortious breach of contract requires, ***in addition to the breach***, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." *See Unity Comm., Inc. v. AT & T Mobility, Inc.*, 643 F.Supp.2d 829, 839 (S.D.Miss.2009) (citing *Wilson v. Gen. Motors Accept. Corp*, 883 So.2d 56 (Miss.2004)) (emphasis added). However, "where there has been no breach of contract, the plaintiff cannot recover for tortious breach." *Id.* (citing *Braidfoot v. William Carey College*, 793 So.2d 642 (Miss.Ct.App.2000)).

As a threshold matter, Plaintiff cannot establish a claim for tortious breach because his underlying claim for breach of the Contract is deficient (as discussed above). Moreover, even if Plaintiff could establish a claim for tortious breach of contract, that claim would be barred by Mississippi's one year statute of limitations for intentional torts. *See Miss Code Ann.* § 15-1-35; *see also Greer v. Armstrong World Industries, Inc.*, 2010 WL 1235841, at *1 (S.D. Miss. Mar. 24, 2010).

As shown above, Plaintiff acknowledged in his deposition that his tortious breach of contract claim is based on the July 14, 2015 alleged threat by Tyson that it was going to terminate his contract. *See* Exhibit C at 304-305. Plaintiff filed this lawsuit on February 23, 2017, well beyond the one-year statutory period allowed for the filing of a claim of tortious

breach of contract. For these reasons, Plaintiff's claim for tortious breach of contract is deficient as a matter of law.

With respect to any breach of contract claim related to the second farm, St. Michael Farm[2], Plaintiff admitted to never having a broiler production contract with Tyson on that farm: "Q. All right. I think you told us this before, but you didn't – you never had a Tyson Broiler Production Contract with Tyson to grow birds on the St. Michael. A. No." *See* Exhibit C at 82.[3] The Plaintiff went on to agree, as he must, that Tyson did not have an obligation to enter into a contract with him on this second farm. "Q. Tyson has a right to contract with who they want to and who they don't want to. Isn't that right? Isn't that right? A. Yes." *See* Exhibit C at 303. To be liable for a breach of contract, there must be a binding contract in existence between two parties. *See Business Communications, Inc. v. Banks*, 90 So.3d 1221, 1225 (Miss. 2012). As it is undisputed that the parties never entered into a broiler production contract pertaining to the St. Michael Farm, any breach of contract claims pertaining to that farm are invalid as a matter of law.

### ii. Plaintiff cannot establish a claim for an <u>anticipatory</u> breach of the contract.

As discussed above, it is undisputed that Tyson never terminated the Contract or committed any actual breach of the terms of the Contract. Rather, Plaintiff is apparently attempting to assert a claim for an <u>anticipatory</u> breach of contract related to Tyson's alleged threat to breach/terminate the Contract in the future. Again, Plaintiff's deposition testimony reinforces that his claim is for an anticipatory, rather than actual, breach of contract:

---

[2] Plaintiff's Complaint does not articulate any "Cause of Action" related to the second farm, St. Michael Farm. *See* Exhibit B, pp. 8 -10. The Complaint merely makes random allegations about this second farm early in the discussion of the background facts.

[3] As explained above, Plaintiff leased St. Michael Farm to other growers who had their own Broiler Production Contracts with Tyson. *See* Exhibit C at 83-84 and 296.

> Q. All right. So you're claiming that Tyson breached your 2012 Broiler Production Contract by threatening, like you've told us before, without any justification, threatening to terminate your contract if you didn't sell the farm. That's what you're claiming?
> A. Yes.
> Q. And you say that that is a tortious breach because you say it was intentional and willful. Is that what you believe?
> A. Intentionally.
> Q. Yes?
> A. Yes.
> Q. All right. You're not claiming any other kind of breach of contract. That's the breach of contract you're claiming. Correct?
> A. Yes, they forced me to sell my farm.

*See* Exhibit C at 304-305.

A party's refusal to meet its future obligations under a contract must be positive and unconditional to be an actionable anticipatory breach of contract. *Old Ladies Home Ass'n v. Hall*, 52 So.2d 650, 654-655 (Miss. 1951); *see also Little v. Dalrymple,* 135 So.2d 403 (Miss. 1961). In addition, it is black letter Mississippi law that a party faced with an anticipatory breach of contract must select one of three available remedies: (1) rescind the contract (2) sue immediately for breach or (3) wait until the anticipated breach occurs and when it does, sue for breach. *Hall*, 52 So.2d at 655; *See also* 3 MS Prac. Encyclopedia MS Law 21.36, Anticipatory Repudiation.

Plaintiff claims that Tyson breached the contract at the July 14, 2015 meeting when it allegedly threatened that if Plaintiff did not sell St. Paul Farm, Tyson would terminate the Contract. The Plaintiff admitted, however, that the alleged threat was not "positive and unconditional" as is required to amount to an actionable anticipatory breach of contract: "Q. Okay. So they're telling you if you don't sell this farm. A. Yes. Q. We're going to end your contract. A. Yes. Q. All right. So the termination – *terminating your contract was going to be conditioned on you not selling the farm. Right? A. Yes.*" *See* Exhibit C at 236 (emphasis

added). As Tyson's alleged threat was admittedly conditional, it cannot be an actionable anticipatory breach of contract under Mississippi law.

Further, when threatened with the alleged anticipatory breach of contract, Plaintiff was required to: rescind the contract, sue immediately, or wait until the anticipated breach (ie., termination) occurred and sue. The Plaintiff did none of these things, as clearly admitted in his deposition testimony. *See* Exhibit C at 270-273. In fact, he continued to work and be compensated by Tyson for almost a full year after this July 14, 2015 meeting. *Id.* Plaintiff was paid over $100,000 by Tyson after this alleged breach of contract and before closing the sale of St. Paul Farm. *See* Affidavit of Ray Ables attached as Exhibit F to Tyson's Motion for Summary Judgment. Plaintiff did not exercise any one of the required options that a party faced with an anticipatory breach of contract must utilize under Mississippi law. As a result, Plaintiff's anticipatory breach of contract claim cannot stand as a matter of law.

Plaintiff's breach of contract claim also is deficient because of the nature of the damages he seeks. Plaintiff is seeking lost profits from the St. Paul Farm. *See* Exhibit E and Plaintiff's Supplemental Discovery Responses attached to Tyson's Motion for Summary Judgment as Exhibit G. Plaintiff sold his farm (for his initial $800,000 asking price nonetheless). *See* Exhibit C at 277. Allowing Plaintiff to recover lost profits for future business proceeds when he has already received the proceeds from the sale of the farm would be an impermissible double recovery as a matter of law. *See e.g. Protectors Ins. Service, Inc. v. U.S. Fidelity & Guar. Co.*, 132 F.3d 612 (10th Cir. 1998); *Albrecht v. The Herald Co.*, 452 F.2d 124 (8th Cir. 1971).

### B. Plaintiff's claim for breach of the duty of good faith and fair dealing is deficient as a matter of law.

Plaintiff's breach of the duty of good faith and fair dealing is based on three alleged actions by Tyson. (1) threatening to terminate the Contract if he did not sell St. Paul Farm, (2)

attempting to get Plaintiff to sign an acknowledgment of voluntary termination of the Contract and (3) not allowing Plaintiff at certain times to use chick mates[4] in his farming operation. *See* Exhibit C at 306-307.[5]

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Unity Communications, Inc. v. AT&T Mobility, LLC*, 643 F. Supp. 2d 829, 842 (S.D. Miss. 2009) (quoting *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992)). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *University of Southern Mississippi v. Williams*, 891 So.2d 160, 170 (Miss. 2004) (quoting *Cenac*, 609 So.2d at 1272). Therefore, "to have a breach of the duty of implied good faith and fair dealing there must first be an existing contract and ***then a breach of that contract***." *Mullen v. Nationwide Mut. Ins. Co.*, 2013 WL 228074, at *4 (S.D. Miss. Jan. 18, 2013) (quoting *Daniels v. Parker and Associates, Inc.*, 99 So.3d 797, 801 (Miss. Ct. App. 2012) (emphasis added)).

For all the reasons explained above, as a matter of law, Tyson did not breach the Contract. Therefore, Plaintiff's claim for breach of the duty of good faith and fair dealing must also fail. In addition, it is undisputed that the Contract contained no provision that required Tyson to allow Plaintiff to use chick mates at any time. Because Plaintiff has no viable claim for breach of any contract, there also can be no breach of the duty of good faith and fair dealing as a matter of law.

---

[4] Chick mates are an automatic chicken feed dispenser utilized in the poultry business.
[5] Specifically, Plaintiff claims that Tyson required Plaintiff at times to hand feed chickens rather than permitting him to utilize chick mates. *See* Exhibit B at 3.7.

### C. Plaintiff's claims for infliction of emotional distress are deficient as a matter of law.

Plaintiff contends that Tyson, in breaching the Contact, either intentionally or negligently inflicted emotional distress upon him. *See* Exhibit B at 4.10. First, Plaintiff's claim for infliction of emotional distress—intentional or negligent—fails to the extent it is premised on Tyson's alleged breach of the Contract. As stated above, Tyson fully complied with the terms of the Contract and acted in accordance with its rights under the Contract. Since Plaintiff's claims for emotional distress are dependent on Tyson's breach of the Contract, Plaintiff's claims for intentional and/or negligent infliction of emotional distress fail. *See Turner v. Northwestern Mut. Life Ins. Co.*, 1995 WL 1945466, at *6 (N.D. Miss. May 30, 1995).

In addition, Plaintiff's claims for intentional infliction of emotional distress and/or negligent infliction of emotional distress are deficient for their own, independent reasons.

### i. Plaintiff Cannot Establish a Claim for Intentional Infliction of Emotional Distress.

To prevail on a claim of intentional infliction of emotional distress in Mississippi, a plaintiff must prove that a defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized community." *See Stewart v. GMAC Mortgage, LLC*, 2011 WL 1296887, at *10 (S.D. Miss March 31, 2011) (quoting *Brown v. Inter–City Fed'l Bank for Sav.*, 738 So.2d 262, 264 (Miss.Ct.App.1999)). In evaluating this type of claim, it is the nature of the alleged "outrageous" act itself—not the seriousness of the alleged consequences—which drives the potential for recovery in a claim for intentional infliction of emotional distress. *See Brown*, 738 So.2d at 265. "Meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *See Jenkins v. City of Grenada*, 813 F. Supp. 443, 446

(N.D. Miss. 1993). Plaintiff's allegations that Tyson threatened to terminate the Contract (though continuing to pay him over $100,000 for the next year) and sent him an acknowledgement of a voluntary termination to sign come nowhere close to what is required to satisfy the intentional infliction of emotional distress standard under Mississippi case law. *See e.g. Piner v. Fid. Nat'l Corp.*, 2003 WL 25537751, at *4 (S.D.Miss. Mar. 31, 2003) ("The [p]laintiffs' contention, taken as true, that [defendant] instructed, directed, ordered, and cajoled them into performing certain unlawful and unethical actions, fails to rise to the level of extreme and outrageous conduct."); *Speed v. Scott*, 787 So.2d 626, 630-31 (Miss.2001) (holding that an employer's repeated references to plaintiff as a liar and a thief did not constitute a claim for intentional infliction of emotional distress); *Raiola v. Chevron U.S.A., Inc.*, 872 So.2d 79, 85 (Miss. Ct. App. 2004)("Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.")

> ii. **Plaintiff Cannot Establish a Claim for Negligent Infliction of Emotional Distress.**

Under Mississippi law, to succeed on a claim of negligent infliction of emotional distress, a plaintiff must prove "the usual elements of duty, breach, causation and damages" along with "some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." *See Stewart*, 2011 WL 1296887, at *10 (quoting *Fouche' v. Shapiro & Massey L.L.P*, 575 F.Supp. 2d 776, 788-89 (S.D. Miss. 2008)). "Mental anguish is a nebulous concept and requires substantial proof for recovery." *Wilson v. General Motors Acceptance Corp.*, 883 So.2d 56, 64 (Miss. 2004) (quoting *Morrison v. Means*, 680 So.2d 803, 805 (Miss. 1996)).

As an initial matter, since there was no underlying breach of contract or other wrongdoing as a matter of law, there can be no resulting claim for emotional distress. In this

case, the relationship between Tyson and Plaintiff was governed by a written contract. The allegations relating to Plaintiff's negligent infliction claim are the same allegations he makes on the breach of contract claim. As demonstrated above, Tyson fully complied with its obligations under the Contract. As a matter of law, Tyson cannot be found liable for negligence when it complied with the Contract between the parties. For this reason alone, Plaintiff's claim for negligent infliction of emotional distress should be dismissed as a matter of law. *See Turner*, 1995 WL 1945466, at *6 (granting summary judgment on negligent infliction of emotional distress claim where defendant was found to have complied with the contract).

Moreover, as stated above, Plaintiff's negligent infliction claim is duplicative of his breach of contract claim. Plaintiff's negligent infliction claim is nothing more than a reiteration of the claim for breach of contract. Where a claim "of negligence adds nothing which would give rise to a cause of action apart from the basic claim for breach of contract," the negligence claim is duplicative and should be dismissed. *See Furr Mktg., Inc. v. Orval Kent Food Co., Inc.*, 682 F. Supp. 884, 886 (S.D. Miss. 1988); *see also, Campbell v. Jackson Business Forms Co.*, 841 F. Supp. 772, 775 (S.D. Miss. 1994); *Oxford Mall Co. v. K&B Miss. Corp.*, 737 F. Supp. 962, 967 (S.D. Miss. 1990)

Finally, Plaintiff does not have the substantial and specific support necessary to establish a triable issue on the emotional distress claim. The Plaintiff simply makes vague allegations that his dispute with Tyson caused him chest pains, stress and hair loss. *See* Exhibit B at 3.9; *see also* Exhibit C at 328-329. In his deposition, however, Plaintiff could not point to any specific time period in which he suffered hair loss, stress or chest pains based on Tyson's alleged actions. *See* Exhibit C at 329-330. Furthermore, Plaintiff stated that he has never been proscribed medication for any stress related issues or hair loss problems. *Id.* at 331. As far as chest pains, Plaintiff

could not deny in his deposition that he has been a smoker for many years and doctors have told him that his chest pains are caused by various respiratory issues and smoking. *Id.* at 333-37. Finally, Plaintiff has never seen a doctor for any emotional problems; much less any that were allegedly caused by Tyson:

> Q. And no doctor has ever told you that they thought that your hair loss was caused by stress or anything from Tyson, have they?
> A. No.
> Q. Have you ever seen a doctor – you've never seen a doctor or psychologist or psychiatrist or anything for any emotional problem, have you?
> A. No.
> Q. No doctor has ever said that you have any emotional problems or any distress, have they?
> A. I didn't see any doctor that say that.
> Q. Okay. And no doctor has ever said that you have any physical or emotional problem caused by Tyson have they?
> A. No.

*See* Exhibit C at 332-333.

Plaintiff's lack of any evidence to demonstrate some sort of injury, either physical or mental, beyond his own self-serving assertions of vague and undocumented injuries, makes this claim ripe for summary judgment. *See, e.g., Ainsworth v. Gildea*, 2010 WL 3522052, at *1 (S.D. Miss. September 1, 2010) (affirming summary judgment where plaintiff claimed she had lost 30 pounds and could not sleep); *Adams v. David's Bridal, Inc.*, 2007 WL 805663, at *6 (S.D. Miss. Mar. 14, 2007) (granting summary judgment where plaintiff's only evidence of injury was weight gain, hair loss, and changes in menstrual cycle); *Edmonds v. Beneficial Mississippi, Inc.*, 2005 WL 2361913, at *3 (S.D. Miss. Sept. 13, 2005) (granting summary judgment where the only evidence of a physical injury that plaintiff could point to was a "conclusory statement which is unsupported by medical testimony to the effect that his blood pressure rose" as a result of the

Defendant's actions). Plaintiff's claim for infliction of emotional distress—either intentional or negligent---is plainly deficient and fails to survive summary judgment as a matter of law.

## V. CONCLUSION

Tyson invests substantial time and resources into establishing and maintaining relationships with its growers. The last thing Tyson wants to do is terminate long-standing grower relationships or force a grower out of the business. Tyson obviously has no incentive to run off a good grower or force a good grower to sell his farm.

Some summary judgments are close calls---this one is not. The material facts of this case are straightforward and undisputed. Plaintiff admits Tyson complied with all the express terms of the contract and never terminated the Contract. Even if in July 2015 Tyson wrongfully threatened to terminate the Contract in the future, Plaintiff had one of three options at that point under Mississippi law: rescind the contract, sue immediately for breach or wait until Tyson terminated and sue for wrongful termination/breach. Plaintiff did none of these, but instead continued to operate under the contract for nearly a year, got paid over $100,000 under the Contract, and then sold his farm for his $800,000 asking price. He cannot now go back and sue for breach of contract and attempt to recover lost profits on top of the sale. Plaintiff's claims are deficient as a matter of law, and summary judgment should be granted.

Dated: February 15, 2018.

Respectfully submitted,

**TYSON FARMS, INC.**

*/s/ R. David Kaufman*
One of Its Attorneys

**OF COUNSEL:**
R. David Kaufman  MSB #3526
William Trey Jones, III  MSB #99185
R. Lane Bobo  MSB #105263
BRUNINI, GRANTHAM, GROWER & HEWES
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone:   (601) 948-3101
Facsimile:    (601) 960-6902
dkaufman@brunini.com
tjones@brunini.com
lbobo@brunini.com

## CERTIFICATE OF SERVICE

I, R. David Kaufman, hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

Dated: February 15, 2018.

<i>/s/ R. David Kaufman</i>
R. David Kaufman
One of Its Attorneys

02870122                                    17