UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THANG QUOC PHAM   PLAINTIFF

V.   CIVIL ACTION NO. 3:17-CV-125-DPJ-FKB

TYSON FARMS, INC.   DEFENDANT

ORDER

Tyson Farms, Inc. ("Tyson") seeks summary judgment [43] on Plaintiff Thang Quoc Pham's claims. For the following reasons, the Court grants Tyson's motion as to the breach-of-contract, anticipatory-breach, and negligent-infliction-of-emotional-distress claims. The motion is otherwise denied. Finally, the Court denies Tyson's related Motion to Strike [58].

I.   Facts and Procedural History

This case arises from Pham's contract to raise broilers—*i.e.*, chickens—for Tyson. In November 2005, Pham entered into a broiler-production contract with Tyson for a seven-year term. 2005 Contract [43-1] at 3–4. After Pham completed his first seven years, Tyson invited him to renew his contract, and he signed the 2012 Broiler Production Contract ("Contract"). 2012 Contract [43-1] at 28–29. Pham says that his relationship with Tyson then went south. As examples, Pham cites multiple instances where Tyson refused to allow him to use his automated chicken feeder ("Chickmate") and instead required him to handfeed approximately 125,000 chickens. Ultimately, around mid-July 2015, Pham asserts that Tyson representatives threatened to pull out of the Contract unless Pham terminated it and sold his farm. Under stress from Tyson's purported threat, Pham located a purchaser and exited the broiler-production business.

Aggrieved by Tyson's alleged conduct, Pham sued Tyson asserting claims for breach of contract, tortious breach of contract, breach of the duty of good faith and fair dealing, and

negligent/intentional infliction of emotional distress. After discovery, Tyson moved for summary judgment [43] as to all claims, and Pham responded in opposition [46, 47]. The parties then presented their positions during oral argument, after which the Court instructed them to submit supplemental briefs. They did so, *see* Def.'s Mem. [56]; Pl.'s Mem. [57], and Tyson has further moved to strike Pham's supplemental expert affidavit, *see* Def.'s Mot. [58]. The Court has subject-matter and personal jurisdiction and is ready to rule on these pending motions.

II.     Motion for Summary Judgment

    A.     Standard

Summary judgment is warranted when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, the court resolves factual controversies in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

B.     Analysis

Pham's summary-judgment response narrows the issues to some extent. First, he expressly concedes his cause of action for anticipatory breach. *See* Pl.'s Mem. [47] at 34. Second, Pham offers no response to Tyson's argument regarding his negligent-infliction-of-emotional-distress claim. The Court finds Pham waived this claim and that it is otherwise due for dismissal. *See Criner v. Tex.-N.M. Power Co.*, 470 F. App'x 364, 368 (5th Cir. 2012) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002))). The remaining claims will be addressed in turn.

1.     Breach of Contract

Tyson says summary judgment is warranted on Pham's breach-of-contract claim because it has not breached any specific Contract provision. In Mississippi, a plaintiff asserting breach of contract must show: "1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it; and 3. that 'the plaintiff' has been thereby damaged monetarily." *Bus./Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012) (quoting *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)). When determining whether a breach occurred, the Mississippi Supreme Court has repeatedly stated that

> the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. . . . Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the

3

intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. On the other hand, if the contract is unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.

*One S., Inc. v. Hollowell*, 963 So. 2d 1156, 1162–63 (Miss. 2007) (internal citations and quotation marks omitted). When the language is ambiguous, "the subsequent interpretation presents a question of fact for the jury." *Neider v. Franklin*, 844 So. 2d 433, 436 (Miss. 2003).

Here, Pham says Tyson breached the Contract in three ways: (1) Tyson's threat to terminate the Contract violated its termination provisions; (2) banning Pham from using Chickmate violated the Contract's best-efforts provision; and (3) Tyson's failure to train Pham regarding Chickmate likewise infringed on the Contract's best-efforts provision. *See* Pl.'s Mem. [47] at 21–27. Pham's first theory falls short and the other two are not properly before the Court.

        a.        Threatened Termination

The Contract included the following provisions regarding termination:

9. <u>Termination</u>.
    A. In addition to the right to cancel this Contract set forth in paragraph 1, Producer has the right to terminate this Contract at any time with no less than ninety (90) days written notice. Company has the right to terminate this Contract upon default by Producer. The following constitute events of default by Producer:

    i. Use of abusive or threatening language with or threat of physical harm to Company's representatives.
    ii. Endangering the health or welfare of Company's chickens, or altering or supplementing Company's feed, medication, or administration schedule(s).
    iii. Selling, collateralizing, or in any manner encumbering or preventing access of Company to Company's chickens, feed, or medication.
    iv. Failure to comply with any provision of this Contract, including but not limited to compliance with all applicable environmental and litter management laws, rules,

      regulations, and ordinances, and all requirements and
      programs contained in the attached Schedules.

  B. Company will give notice of default to Producer. If Company
    exercises its right to terminate this Contract, Company will provide
    a written termination notice that will become effective 90 days
    from the date thereof. Upon default, Company may take
    immediate possession of Company's chickens, feed, and
    medication without further notice, delay, or legal process. . . .
    Company shall not be obligated to deliver chickens to Producer
    subsequent to providing notice of default. No waiver by Company
    of any default will operate as a waiver of any other default, and
    Company's rights and remedies are cumulative and not exclusive
    of any other right provided by law of equity.

2012 Contract [1-2] at 2–3.

  Pham was not in default, and Tyson never activated the termination provisions of the Contract. Instead, it continued to perform under the Contract for an additional year after it allegedly threatened to end the agreement. Pham Dep. [46-1] at 70–71. So technically speaking, Tyson never breached the actual terms of the agreement.

  But Pham says the alleged threats had the effect of terminating the contract without satisfying the termination clause. Pl.'s Mem. [47] at 23. In some factual contexts, such a theory might be relevant to an anticipatory breach, but Pham is not making that claim. Pl.'s Mem. [47] at 34. Pham instead suggests what sounds like a constructive-breach theory. He does not, however, cite any Mississippi cases supporting a breach-of-contract claim under these facts, and the Court is not aware of any.[1]

  Although Pham offered no binding authority on this point, he did cite *Tilstra v. BouMatic LLC*, during oral argument. 791 F.3d 749 (7th Cir. 2015) (Posner, J.). There, a dairy-equipment manufacturer (BouMatic) forced one of its dealerships (Tilstra) to sell to another dealer by

---

[1] Pham spent little time in his memorandum addressing the actual breach-of-contract claim and largely folded it into the good-faith claim, which will be addressed below.

5

threatening to shrink Tilstra's sales territory to essentially nothing if it resisted the sale. *Id.* at 752. Although BouMatic did not technically violate the contract's termination provision, the jury returned a verdict for the plaintiff/dealership. *Id.* at 752. The Seventh Circuit affirmed based on a constructive-breach theory, and Pham now urges this Court to follow suit. But it does not appear that *Tilstra* actually recognized constructive termination apart from breach of the duty of good faith and fair dealing. Before trial, the district court held that "under the facts of this case, a breach of the duty of good faith and constructive termination are two sides of the same coin." *Tilstra v. Bou-Matic, LLC*, No. 12-CV-827-SLC, 2014 WL 4662483, at *4 (W.D. Wis. Sept. 19, 2014). And when the Seventh Circuit analyzed the breach, the only authority it cited related to bad faith under Wisconsin law. *Tilstra*, 791 F.3d at 752.

All this suggests that Pham and Tyson's dispute over the breach-of-contract claim may be one of semantics. While Pham has not shown that Mississippi would recognize a stand-alone breach-of-contract claim under the circumstances, Mississippi law "suppl[ies] a term requiring both parties to a contract to exercise what is called 'good faith.'" *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) (citation omitted). And Pham says Tyson breached that duty. *See infra* Section II(B)(2). But because Pham has not shown that Tyson breached the express contract terms when it allegedly threatened to withdraw, that claim is dismissed.

b. Chickmate

Pham's other two breach-of-contract theories relate to Chickmate. As noted above, Chickmate was a feeding tool for young chicks. Tyson told Pham he could not use Chickmate because he was misusing the equipment, wasting food, and threatening the health of the broilers. Pham now says Tyson breached the Contract's best-efforts provision by failing to train him on Chickmate and by preventing him from using it.

6

The best-efforts provisions in the Contract state as follows:

> 2. <u>Duties of Company</u>.
>     A. Company will furnish Producer with and will retain title and ownership to chickens, feed, and medication. Company will determine the amount, type, frequency, and time of delivery to and pick-up from Producer of chickens, feed, and medication.
>     B. Company will provide veterinary services and technical advice to assist Producer's production of Broilers.
>     C. Company will comply with all applicable federal, state, and local statutes, rules, regulations, and ordinances in performance of this Contract.
>     . . . .
>
> 4. <u>Best Efforts</u>.
>     Company and Producer will use their reasonable best efforts in the production of Broilers [i.e., chickens bred for consumption].

Contract [1-2] at 2.

Although the contract language does not mention Chickmate by name, it is at least arguable that the best-efforts obligations would cover it. But there are two threshold problems—Pham failed to clearly plead this claim and then waived it.

In his Complaint, Pham mentioned Chickmate and the prohibition against using it. But he did so with respect to the original 2005 contract, stating that Tyson prevented him from using Chickmate to "hinder and prevent Mr. Pham from being able to sufficiently feed his poultry for proper growth under his 2005 Contract." Pl.'s Compl. [1] ¶ 3.8. He did not aver those same concerns under the subject 2012 Contract, stating more generally that "Tyson breached the 2012 contract with Mr. Pham." *Id.* ¶ 4.2. And when given the opportunity to explain his breach-of-contract claim during his deposition, Pham stated that it was based on Tyson's alleged threat to end the Contract and nothing else. Pham Dep. [46-1] at 78. It was not until his summary-judgment response that Pham said Tyson had breached the best-efforts provision by prohibiting him from using Chickmate.

7

There are two approaches for addressing a new legal theory raised in response to a dispositive motion—ignore the new theory or treat it as a motion to amend. *Compare Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court"), *with Debowale v. US Inc.*, No. 95-20031, 1995 WL 450199, at *1 (5th Cir. July 3, 1995) (per curiam) ("[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it.").

In this case, the Court will not infer a never-made motion to amend. It might be different had Pham merely excluded the theory from his Complaint, but he went further, testifying that he based the breach-of-contract claim on the alleged threats and that he was "not claiming any other kind of breach of contract." Pham Dep. [46-1] at 305. Tyson was entitled to rely on that testimony as it concluded discovery and prepared its dispositive motion. *See Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory raised in response to summary-judgment motion). Had Pham wished to pursue this theory, he could have pleaded it in the Complaint; clarified the issue during or immediately after the deposition; or timely moved to amend. He did none of that, and the deadline to file a proper motion to amend under Federal Rule of Civil Procedure 15 and the Case Management Order has long passed. Under these circumstances, the breach-of-contract claim is limited to the alleged threat to discontinue the Contract, and that claim is dismissed for the reasons stated.

2. Breach of the Duty of Good Faith and Fair Dealing

The issues regarding Pham's good-faith claim have evolved over the course of the summary-judgment proceedings. Initially, Tyson said that a breach of contract is a prerequisite to bringing a breach-of-good-faith claim under Mississippi law. *See* Def.'s Mem. [44] at 11. But *Cenac v. Murry* forecloses that argument. 609 So. 2d at 1272.[2]

It is tempting to stop here and merely note that arguments raised in Tyson's reply are not properly before the Court. *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (observing "practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs"). Nevertheless, the issues were argued during the hearing and addressed in supplemental briefing. The Court will therefore consider two additional theories: (1) that Pham must establish exceptional circumstances—including a financial motive—to sustain a good-faith claim and (2) that Pham cannot show that his expectations under the Contract have been injured because he sold his farm as a going concern, which included lost profits.

---

[2] The most direct statement supporting Tyson's position is found in *Daniels v. Parker & Assocs., Inc.*, where the Mississippi Court of Appeals stated that "to have a breach of the duty of implied good faith and fair dealing there must first be an existing contract *and then a breach of that contract.*" 99 So. 3d 797, 801 (Miss. Ct. App. 2012) (emphasis added). But that language paraphrases *Lippincott v. Mississippi Bureau of Narcotics*, where the court held that "the claim of breach of the covenant of good faith itself asserts a tort, one flowing from tortious breach of contract." 856 So. 2d 465, 468 (Miss. Ct. App. 2003). *Lippincott* does not address whether a party can breach the implied good-faith obligations without otherwise breaching specific contract provisions. Moreover, the quoted language from *Lippincott* cites *Braidfoot v. William Carey College*, where the court addressed breach of contract and breach of the implied duty of good faith separately. 793 So. 2d 642 (Miss. Ct. App. 2000). The court held: "Nothing in the record supports a claim that this contract was breached *or* that the College breached its implied duty of good faith and fair dealing." *Id.* at 651 (emphasis added). All of this aside, the Mississippi Supreme Court allowed an independent claim for breach of the duty of good faith and fair dealing in *Cenac*. *Cenac* controls.

Tyson first says "the Mississippi Supreme Court would only allow a good faith and fair dealing case to go to a jury if the case contains the exceptional facts and elements present in Cenac," including "evidence of bad faith financial motive" for the disputed conduct. Def.'s Mem. [56] at 20. But Tyson acknowledges that "there admittedly is no case in Mississippi expressly stating that a defendant's bad faith financial motive is a required element for a claim for breach of the covenant of good faith and fair dealing." *Id.* at 18.

Tyson's concession is correct. Mississippi courts have consistently described good-faith claims without reference to financial motives. This Court will not introduce any additional elements. Instead,

> [t]he breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness. The covenant holds that neither party will do anything which injures the right of the other to receive the benefits of the agreement. The covenant imposes a duty not to prevent or hinder the other party's performance, but may also impose a duty to take some affirmative steps to cooperate in achieving these goals.

*Ferrara v. Walters*, 919 So. 2d 876, 883 (Miss. 2005) (internal citations and quotation marks omitted).

Under this test, Pham must show some conduct that "violates standards of decency." *Id.* Tyson says Pham fails to meet that standard because the alleged acts are too pedestrian, but the Court concludes that a fact question exists. Pham first says Tyson treated him differently from other broiler producers by prohibiting him from using Chickmate to feed his chickens. Pham Dep. [46-1] at 64.[3] Pham was therefore forced to handfeed 125,000 chickens daily causing him to underperform. *Id.* at 32, 35, 79–80. He believes the tactic was designed to cause default or to

---

[3] Unlike the delinquent breach-of-contract claim related to Chickmate, Pham did say in his deposition that the prohibition against using the machine breached the duty of good faith. *Id.* at 79.

force him to voluntarily terminate his contract. Second, Pham asserts Tyson strong-armed him into selling his farm and business even though Tyson lacked a contractual basis to terminate. *See* Pl.'s Mem. [47] at 20, 24. Finally, he says Tyson sent a "sham letter" suggesting that Pham voluntarily terminated the contract. *Id.* at 29, 32. While Tyson has reasons for its decisions, the record must be viewed in the light most favorable to Pham. *Little*, 37 F.3d at 1075. And in that light, a question of fact exists whether Tyson fulfilled its duty to avoid hindering Pham's performance and to take steps to "cooperate in achieving" that performance. *Ferrara*, 919 So. 2d at 883.

Additionally, under the same test, Pham must show that Tyson's conduct interfered with his right "to receive the benefits of the agreement." *Id.* In other words, it frustrated his expectations. Tyson says Pham falls short in this regard because the relevant expectations must be economic. It further argues that Pham realized his economic expectations when he sold his farm for fair-market value, including any future profits Pham would have generated had the parties completed the Contract. *See* Def.'s Mem. [56] at 12–16. Awarding damages under these circumstances would, according to Tyson, constitute a windfall. *Id.* at 15 (citing *R.K. v. J.K.*, 946 So. 2d 764, 777 (Miss. 2007) ("It is well known that this state does not endorse double recovery.")).

"[T]he appropriate remedy for the breach of the covenant of good faith is the measure of expectancy type damages." *Cenac*, 609 So. 2d at 1273. Generally, "damages are the favored remedy unless damages are wholly inadequate as a remedy." *Id.* at 1274. Neither party found a Mississippi case directly answering whether the relevant expectations must be economic as opposed to the more esoteric benefit of owning his farm and running his business under contract. But assuming without deciding that only economic expectations count, Pham submitted an

11

expert opinion from certified public accountant H. Kenneth Lefoldt establishing lost profits from the alleged forced termination. *See* Lefoldt Report [57-1] at 2–4.

Tyson now rejects Lefoldt's opinion, but it never moved to strike it.[4] Instead it makes a legal argument that no lost profits occurred because Pham sold the business. But that legal argument has imbedded questions of fact, and when the record is viewed in the light most favorable to Pham, the Court finds that there is a question of fact whether Tyson frustrated Pham's economic expectations. The motion is denied as to the breach-of-good-faith-and-fair-dealing claim.

### 3. Tortious Breach of Contract

A claim for tortious breach of contract in Mississippi requires "in addition to the breach, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." *Unity Comm., Inc. v. AT&T Mobility, Inc.*, 643 F. Supp. 2d 829, 839 (S.D. Miss. 2009) (citing *Wilson v. Gen. Motors Accept. Corp*, 883 So. 2d 56 (Miss. 2004)). Here, Tyson says that Pham's tortious-breach-of-contract claim fails as a matter of law for two reasons: Tyson never breached the contract and the claim is timed-barred under Mississippi Code section 15-1-35.

Starting with the time-bar argument, section 15-1-35 creates a one-year statute of limitation applied to "actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels." When, as in this case, the disputed claim is not enumerated in the statute, "the relevant inquiry is whether the alleged conduct was so closely analogous to one of the torts enumerated in the statute that it falls within the one year bar." *B&C Constr. & Equip., LLC v. Ovella*, 880 F. Supp. 2d 735, 739 (S.D. Miss. 2012) (citation omitted). Tortious

---

[4] As discussed later, Tyson has moved to strike Lefoldt's supplemental opinion.

12

breach of contract does not meet this test. *Id.* The one-year limitation does not apply; the claim is timely.

The next question is whether Pham can show a tortious breach of contract. As noted above, Pham has not established a jury issue as to an express breach of contract. And at this stage, the Court would desire more research on whether Mississippi would allow a separate tortious-breach-of-contract claim premised on the breach of the implied duty of good faith and fair dealing. The issue will be carried over. *See Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (holding that "even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a [sic] better course would be to proceed to a full trial.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986)).[5]

### 4. Intentional Infliction of Emotional Distress

Tyson says Pham's intentional-infliction-of-emotional-distress ("IIED") claims fail as a matter of law because its conduct was not sufficiently outrageous. In Mississippi, a successful IIED claim requires proof that: "1. [The defendant] committed an act without justification or reason; 2. The act is one which evokes outrage or revulsion in civilized society; 3. The act was directed at or intended to cause harm to [the plaintiff]; and 4. Any resulting emotional distress was foreseeable from this intentional act." *Pierce v. Cook*, 992 So. 2d 612, 626–27 (Miss. 2008).

Regarding the outrage element,

> the conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability clearly does not

---

[5] That said, the Mississippi Supreme Court has held that a "breach of an implied covenant of good faith and fair dealing may . . . reach[ ] the level of an independent tort." *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 201 (Miss. 2002). So the end result may be the same, notwithstanding the legal label Pham attached to his claim. Finally, it remains to be seen whether the evidence is sufficient to send the claim to the jury as an independent tort.

13

extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. It is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress.

*Brown v. Inter-City Fed. Bank for Sav.*, 738 So. 2d 262, 264–65 (Miss. Ct. App. 1999) (internal citations and brackets omitted); *see also Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (holding that defendant's conduct must be "wanton and willful and it would evoke outrage or revulsion" (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995))).

Pham asserts that the alleged acts he cites for the breach-of-good-faith-and-fair-dealing claim likewise constitute sufficiently outrageous conduct. Again, Tyson disagrees, and it may have a point. But the record must be viewed in the light most favorable to Pham. And on this record, the Court will allow the claim to move forward. *See Kunin*, 69 F.3d at 62.

III. Motion to Strike Untimely Affidavit

In response to Tyson's arguments during the hearing, Pham submitted an affidavit from his expert Kenneth Lefoldt opining on Pham's economic injuries. *See* Def.'s Mot. [58]. Tyson says this affidavit should be stricken because it (1) was submitted after the deadline to designate experts passed, (2) seeks to offer new information not included in Lefoldt's earlier expert report, and (3) contradicts information provided by Pham's other expert, Benton Gibson. *See id.* Pham, in turn, says the affidavit is a rebuttal affidavit in response to Tyson's arguments or, alternatively, a supplemental report. *See* Pl.'s Resp. [60] at 1–6. Further, Pham says that the factors presented in *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989), support the admission of Lefoldt's affidavit. *See id.* at 6–10. The Court will address each of these arguments in turn.[6]

---

[6] Pham also claims that the issue is moot as the Court need not consider the affidavit in ruling on the pending summary-judgment motion. *See* Pl.'s Mem. [60] at 1–2. While Pham is correct that

14

Pham first argues that Lefoldt's affidavit is a properly submitted rebuttal affidavit. In pertinent part, Federal Rule of Civil Procedure 26(a)(2)(D) states:

> A party must make [expert] disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
>
> > (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
> >
> > (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

As such, a rebuttal report must respond to critiques by another party's expert. Here, Tyson has not proffered any expert testimony attacking the reliability of Lefoldt's initial report; rather, Tyson is attacking only the legal sufficiency of Pham's evidence proffered to support his claims. Accordingly, Lefoldt's affidavit is not a true rebuttal report as envisioned under Rule 26(a).

Alternatively, Pham says Lefoldt's affidavit is offered merely to supplement his earlier report under Federal Rule of Civil Procedure 26(e). As this Court noted in another case:

> Rule 26(e)(1)(A) allows a party to supplement when it "learns that in some material respect the disclosure or response is incomplete or incorrect." The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information. And the rule is not a basis to make material additions to an initial report.
>
> As such, courts frequently disallow purported "supplements" offered to defeat summary judgment when the opinions could have been offered at an earlier time.

*South v. Austin*, No. 3:15-CV-342-DPJ-FKB, 2016 WL 7077617, at *1–2 (S.D. Miss. Dec. 2, 2016) (internal citations omitted).

---

the Court did not rely on Lefoldt's supplemental affidavit, the Court must nevertheless decide whether Lefoldt should be allowed to supplement his opinions going forward.

15

Here, Lefoldt submitted an initial expert report opining that Pham lost $407,511 when the Contract prematurely terminated. *See* Lefoldt Report [56-3] at 2. He arrived at that amount by multiplying the monthly cash profit under the contract by the number of months it was cut short. *Id.* But Lefoldt supplemented that opinion in response to Tyson's argument that the sales price of the farm fully accounted for the lost profits. Now he says "[t]he lost profits addressed in my damage calculation are separate from and independent of the appraisal value of the farm." Lefoldt Aff. [57-1] at 1. He explains that "[i]n the event the 2012 Contract had not been canceled by Tyson, and Pham had sold his farm at the end of his contract, it is expected that he would have received the profits to be earned over the course of the 2012 Contract in the amount of approximately $407,511." *Id.* He reaches that opinion based on the conclusion that "[t]he farm was sold at fair market value as land and equipment only, not including any going concern business value" because Pham's poultry contract with Tyson did not transfer to the new owner. *Id.* Tyson says this statement materially alters Lefoldt's initial report.

The Court finds that under the procedural history of this case, Lefoldt's new affidavit should be considered a supplemental report. Lefoldt has not materially altered his opinion as Tyson argues; he merely explains why Tyson's summary-judgment argument does not change his opinion that Pham lost $407,511. *Cf. South*, 2016 WL 7077617, at *6 ("The disputed opinions from his affidavit are more specific and detailed, offering additional liability and causation theories to avoid summary judgment. A party cannot circumvent the disclosure requirements in this way.").

This finding does not end the analysis, however, as Pham's supplementation is untimely under Local Uniform Civil Rule 26.1(a)(5), which requires "[a] party . . . to supplement disclosures at appropriate intervals under [Rule] 26(e) and in no event later than the discovery

16

deadline established by the case management order." Therefore, the Court must consider whether Pham should be allowed to supplement Lefoldt's initial report almost five months after the close of discovery.

In *Bradley*, the Fifth Circuit articulated a four-factor test for admitting untimely expert testimony: "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness." 866 F.2d at 125.

The Court finds that these factors favor allowing Pham to delinquently supplement Lefoldt's affidavit. First, Lefoldt's affidavit is clearly important to Pham as it addresses Tyson's double-recovery argument. Second, despite Tyson's averment that it would be prejudiced because it lacks an expert to counter Lefoldt's damage calculation, it was Tyson's decision to forgo an expert in response to Lefoldt's initial disclosure. *See* Def.'s Reply [61] at 8. As identified by Pham, "Lefoldt's affidavit defends Lefoldt's methodologies, just as Lefoldt will defend his methodologies and opinions when cross-examined at trial." Pl.'s Mem. [60] at 5. Tyson will have the opportunity to attack Lefoldt's reliability during cross-examination. Third, to the extent prejudice does exist in this matter, the Court finds that a continuance and counter-designations by Tyson would cure it. Lastly, Pham's explanation for why he did not supplement Lefoldt's report earlier seems logical. Tyson never moved to strike, made no counter designations, and did not challenge Lefoldt's damages calculations until its summary-judgment motion. Even then, the argument was limited to the contract claim, whereas it was extended to the good-faith claim during oral argument.

In sum, the Court finds that the *Bradley* factors weigh in favor of allowing Pham to supplement Lefoldt's affidavit with the following caveats: (1) within 20 days of this Order, Tyson may depose Lefoldt regarding his affidavit and (2) within 20 days of that deposition, or the expiration of the deadline to take it, whichever occurs first, Tyson may counter-designate an expert to address Lefoldt's new affidavit. Tyson's motion [58] is therefore denied.

IV.   Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Tyson's Motion for Summary Judgment [43] is denied in part and granted in part. Additionally, Tyson's Motion to Strike [58] is denied. Tyson is nevertheless granted limited leave to designate an expert witness to address Lefoldt's affidavit, and it may depose Lefoldt. Once Tyson determines whether it will counter-designate, it should confer with Pham and contact the Court to set an appropriate pretrial-conference date.

**SO ORDERED AND ADJUDGED** this the 30th day of August, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE